IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JACQUELINE ROMERO,**

        **Plaintiff,**

**v.**                                        **CIV 03-0965 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 11*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 12*), Defendant's response to the motion (*Doc. 15*), Plaintiff's reply to the response (*Doc. 16*), and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## **I.  Procedural History**

On February 20, 2001, Plaintiff, Jacqueline Romero, filed an application for supplemental security income benefits. (*R. at 25.*)[1] On February 21, 2001, Plaintiff filed an application for disability insurance benefits. (*R. at 61-63.*)  In the Disability Report submitted with her applications, Plaintiff alleged a disability since March 15, 1999, due to seizures, inability to stand for long periods of time, difficulty walking and constant pain. (*R. at 81.*)  Plaintiff also alleged in the Disability Report that her illnesses, injuries or conditions first bothered her on June 15, 1995, and that she became unable to work because of her illnesses, injuries or conditions on March 15, 1999. (*R. at 81.*)  It is undisputed that Plaintiff was last insured for disability insurance benefits on June 30, 2000. (*R. at 65.*)  Plaintiff's applications were denied at the initial and reconsideration levels. (*R. at 25.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on August 21, 2002. (*R. at 391-417.*)  Plaintiff was present and testified at the hearing. (*R. at 391-392.*)  Plaintiff was represented by counsel at the hearing. (*R. at 391-394.*)  On December 4, 2002, the ALJ issued his partially favorable decision in which he found that Plaintiff: (1) was not disabled on or prior to June 30, 2000, and, therefore, was not entitled to disability insurance benefits; (2) was not disabled prior to March 13, 2001, and, therefore, was not eligible for supplemental security income benefits prior to that date; and (3) was disabled as of March 13, 2001, and, therefore, was eligible for supplemental security income benefits as of that date. (*R. at 29-30.*)

---

[1]The Social Security Administration's Office of Hearings and Appeals certified that Plaintiff's application for supplemental security income benefits was not available for inclusion in the *Record*. (*Court Transcript Index at "i."*)

The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she has not engaged in substantial gainful activity since March 15, 1999, her alleged onset date of disability; (2) she has severe physical and psychological impairments;[2] (3) she has no impairment that meets or equals the criteria of any listed impairment; (4) her assertions concerning her inability to work are credible for the latter period under review in this case; (5) from March 15, 1999, her alleged onset date, to March 13, 2001, she retained a residual functional capacity (hereinafter "RFC") for a full range of sedentary work; however, from March 13, 2001, forward, she lacked an RFC to perform sustained work activity even at the sedentary level of exertion; (6) during the times at issue in this case, she was not able to perform her past relevant work and was a younger individual (age between 18-44); (7) she has a limited education; (8) she has a skilled work background and may, or may not, have transferable skills from her past relevant work; (9) based on her exertional capacity for sedentary work and her vocational profile, a finding of "not disabled" is directed by Medical-Vocational Guidelines 201.25 and 201.26[3] for the period from March 15, 1999 to March 13, 2001; (10) based on her lack of an exertional capacity to perform sedentary work on a sustained basis, and her vocational profile, a finding of "disabled" is directed by section 201.00(h) as of March 13, 2001; (11) she has been under a disability, as defined in the Social Security Act, since March 13, 2001, but not prior to that date; (12) she is not entitled to disability insurance benefits as she was not disabled prior to or on June 30, 2000, the date she last met the insured status requirements; and (13) she is eligible

---

[2]The ALJ found that Plaintiff has had the following severe impairments during certain time periods under review: chest wall pain with pain between her ribs, chronic back pain, a chronic pain disorder, thyroiditis (inflammation of the thyroid) and an anxiety disorder. (*R. at 26.*)

[3]The Medical-Vocational Guidelines (hereinafter "Medical-Vocational Guidelines") are at 20 C.F.R., Pt. 404, Subpt. P, App. 2.

3

for supplemental security income benefits as of March 13, 2001, the date that she was found to be disabled. (*R. at 29-30.*)

After the ALJ issued his decision, Plaintiff filed a request for review on January 29, 2003. (*R. at 17-20.*)  On August 1, 2003, the Appeals Council issued its decision denying her request and upholding the decision of the ALJ, making the ALJ's decision the final decision of the Commissioner. (*R. at 6-8.*)  On August 18, 2003, Plaintiff filed her complaint in this action. (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y. of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *See, e.g., Sisco v. U. S. Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  In making the substantial evidence determination on review, the Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  Plaintiff's Age, Education, Work Experience

Plaintiff was born on October 25, 1961. (*R. at 61, 395.*)  At the time of the hearing, she was forty years old. (*R. at 395.*)  She completed the eleventh grade and has past work experience as a retail manager and cashier. (*R. at 87, 92.*)

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at step five of the five-step sequential evaluation process for determining disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Specifically, Plaintiff argues that: (1) the ALJ's finding of a March 13, 2001, onset date for Plaintiff's disability is not supported by substantial evidence and is contrary to law; and (2) the ALJ's use of the Medical-Vocational Guidelines 201.25 and 201.26 to determine that Plaintiff was not disabled prior to March 13, 2001, without the opinion of vocational expert, was contrary to law.  Plaintiff asks the Court to reverse the Commissioner's final decision and remand this case for the payment of benefits or, in the alternative, to remand this case for a rehearing.  Defendant argues that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.

For the reasons set forth below, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* as a whole, comports with relevant legal standards and should be **AFFIRMED**.

### A.  Determination of Onset Date - Substantial Evidence

Plaintiff contends that the ALJ's determination of the onset date of her disability is not supported by substantial evidence.  The ALJ reviewed the evidence in the *Record* and found that Plaintiff's disability began on March 13, 2001. (*R. at 28-30.*)  This finding is critical in Plaintiff's case because it excludes her claim for disability insurance benefits which requires that she prove she became disabled prior to the expiration of her insured status on June 30, 2000.  (*R. at 65.*)  *See Potter v. Sec'y. of Health and Human Services*, 905 F.2d 1346, 1347 (10th Cir. 1990).

The ALJ based his determination of Plaintiff's disability onset date primarily on the medical evidence in the *Record*.  Plaintiff alleged an onset date of March 15, 1999. (*R. at 81.*)  However, as

5

the ALJ noted in his decision, there are few medical records for calendar years 1999 and 2000, and these records do not show that Plaintiff had any chronic disabling condition during those years. On June 16, 1999, Plaintiff was treated at the Presbyterian Hospital emergency room for right rib pain. (*R. at 181-182.*) She was given pain injections, and instructed to take prescription pain medication and make an appointment with the Pain and Wellness Center for a nerve block. (*R. at 182.*) The record of this emergency room visit states that Plaintiff was in "moderate distress," was not seeing a doctor and had not been on any medication since the previous December[4] when she underwent intercostal nerve blocks for her condition. (*R. at 181-182.*) Her diagnosis was "recurrent right intercostal neuritis." (*R. at 182.*) In August of 1999, Plaintiff was treated at St. Joseph Healthcare for a fractured toe. (*R. at 165-166.*) On July 18, 2000, Plaintiff was treated at Presbyterian Hospital emergency room and diagnosed with "chest wall pain." (*R. at 179-180.*) She was instructed to take oxycodone as directed and call the New Mexico Pain and Wellness Center for an appointment. (*R. at 179.*) On July 19, 2000, Plaintiff was again treated at Presbyterian Hospital emergency room and diagnosed with "chronic chest wall pain" on her right side. (*R. at 174-178.*) She was instructed to take over-the-counter medication and obtain a referral from her primary care physician to the University of New Mexico pain clinic. (*R. at 175.*) On July 19, 2000, Plaintiff was treated at University Hospital emergency room. (*R. at 218-219.*) She complained of right rib pain but left the hospital before a complete evaluation could be done. (*R. at 219.*) On August 14, 2000, Plaintiff was seen by Cesar Velarde, M.D., at the University of New Mexico Health Sciences Center. (*R. at 214-215.*) Dr. Velarde noted Plaintiff's complaints of right-sided chest and abdominal wall pain and the

---

[4]Plaintiff's medical records indicate that she was treated at the New Mexico Pain and Wellness Center on December 1, 1998, for right upper quadrant abdominal and flank pain with intercostal nerve blocks that relieved her pain and with medication. (*R. at 183-184.*)

fact that she had been treated by Presbyterian Pain [and] Wellness Center and "over there she was responding pretty well to intercostal nerve blocks." (*R. at 214.*) He also noted that her pain had been progressive, was not responding very well to opiate medication, was impairing her sleep and her regular activities. (*Id.*) In a letter of the same date, Dr. Velarde noted that Plaintiff had been treated previously with intercostal nerve blocks which provided her with "9 months to a year of total pain relief." (*R. at 335.*)

In the autumn of 2000, the frequency of Plaintiff's medical treatments increased. On September 12, 2000, Dr. Velarde administered an intercostal nerve block, noted a "good response" and continued Plaintiff on prescribed pain medications. (*R. at 216.*) On October 10, 2000, Plaintiff was treated at University Hospital. (*R. at 231.*) On that visit, she complained of right and left chest pain. (*Id.*) On November 14, 2000, Plaintiff was seen again by Dr. Velarde and he administered more nerve blocks. (*R. at 230.*) On that visit, Plaintiff complained of continued right chest pain, intermittent left chest pain, and told Dr. Velarde that the previous nerve block provided relief for only two and a half weeks. (*Id.*)

In early 2001, Plaintiff's pain worsened and on March 13, 2001, a spinal cord stimulator was surgically inserted in Plaintiff's thoracic spine to relieve her chest wall pain. (*R. at 192-194.*) The machine to operate the stimulator was surgically inserted on March 16, 2001. (*R. at 189-190.*) While the surgery went well, Plaintiff's condition continued to deteriorate. On May 16, 2001, she was seen at University Hospital with complaints of weakness and shakiness, a tremor, tingling, shortness of breath and intermittent short, stabbing chest pains. (*R. at 195-197.*) Her treating physician, Dr. Madeline M. Grigg-Damberger, M.D., noted that these chest pains differed from the

right anterior chest pains Plaintiff had experienced previously. (*R. at 195.*) Records of this visit and other, subsequent medical records, show that Plaintiff continued to be treated for various conditions.

The ALJ determined that March 13, 2001, the date the spinal cord stimulator was surgically inserted in Plaintiff's spine to relieve her chest wall pain, was the onset date for Plaintiff's disability. The ALJ chose that date because he found that there was sufficient medical documentation in the *Record*, as of that date, to establish that Plaintiff was under a disability. (*R. at 26.*) Additionally, the ALJ considered the fact that Plaintiff underwent spinal surgery for pain relief on that date to be substantiation of the seriousness of her right-sided pain at that point in time. (*R. at 28.*) "[P]ain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001.) The medical evidence shows that Plaintiff's pain reached this level in March of 2001. Based on a review of the *Record*, including all of the medical evidence, the Court finds there is substantial evidence to support the ALJ's determination of a March 13, 2001 onset date for Plaintiff's disability.

### B.  Determination of Onset Date - Failure to Consult Medical Advisor

Plaintiff contends that the ALJ's determination of the onset date of her disability is contrary to law because the ALJ failed to consult a medical advisor in determining the onset date pursuant to *Social Security Ruling* 83-20, 1983 WL 31249. The ALJ is not required to consult a medical advisor "in every case where the onset of disability must be inferred." *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995). Only if the medical evidence of onset is ambiguous must a medical advisor be consulted. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995).

In this case, the Court finds that the medical evidence supports the ALJ's finding that while Plaintiff had a progressively worsening chronic pain disorder, her condition was not disabling before

March 13, 2001. *Social Security Ruling* 83-20 provides that the established onset date for disability "must be fixed based on the facts and never inconsistent with the medical evidence of record." *Social Security Ruling* 83-20, 1983 WL 31249, at *3. Thus, the Court finds that the ALJ was not obliged to consult a medical advisor to determine the onset date of Plaintiff's disability.

### C.  Use of Medical-Vocational Guidelines

Plaintiff asserts that the ALJ erred in relying on the Medical-Vocational Guidelines to find that she was not disabled prior to March 13, 2001. (*R. at 28-29.*) Plaintiff contends that the ALJ should have obtained the testimony of a vocational expert regarding the effect of Plaintiff's pain on her ability to work and only used the Medical-Vocational Guidelines as a framework for decision-making pursuant to 20 C.F.R., Pt. 404, Subpt. P, App. 2, Section 200.00(e)(2). The Court disagrees.

The ALJ properly relied on the Medical-Vocational Guidelines to determine if Plaintiff was disabled prior to March 13, 2001, because he determined that Plaintiff's pain did not limit her ability to perform a full range of sedentary work during the period from March 15, 1999, her alleged onset date, to March 13, 2001, the date her disability began. (*R. at 28-29.*) *See Castellano v. Sec'y. of Health and Human Services*, 26 F.3d 1027, 1030 (10th Cir. 1994) (presence of non-exertional impairment does not preclude use of Medical-Vocational Guidelines if non-exertional impairment does not further limit claimant's ability to work). The medical evidence discussed above supports the ALJ's use of the Medical-Vocational Guidelines. Prior to 2001, Plaintiff's pain was controlled rather well by conservative treatments such as medications and pain blocks; however, it worsened significantly in 2001 and thereafter. Because the ALJ properly found that Plaintiff's functional abilities were not limited by her pain prior to March 13, 2001, the testimony of a vocational expert was not required. *See Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (testimony of

vocational expert required when non-exertional impairment limits capacity to work).  Accordingly, the Court concludes that the ALJ's reliance on the Medical-Vocational Guidelines complied with applicable law and that he was not required to obtain the testimony of a vocational expert to find that Plaintiff was "not disabled" during the period from March 15, 1999 to March 13, 2001.

.                                                **V.  Conclusion**

Based on the foregoing, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing (*Doc. 11*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.


*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**